UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MOCA SYSTEMS, INC.<br><br>      Plaintiff,<br><br>vs.<br><br>KEVIN F. BERNIER AND PENLEY SYSTEMS, LLC,<br><br>      Defendants. | Civil Action No. |

**COMPLAINT**

During the second half of 2012, the defendant Kevin Bernier secretly took steps to undermine the long-standing and important relationship between his employer, plaintiff MOCA Systems, Inc. ("MOCA"), and a key MOCA client. Mr. Bernier, the former CEO of MOCA, was determined to cause the client to cease doing business with MOCA, and to start working with Defendant Penley Systems, LLC ("Penley Systems"), a company that he was clandestinely founding while pretending to be a loyal employee of MOCA.

When Mr. Bernier left MOCA to begin the next step of his plan, he only got more brazen and calculating. He entered MOCA's offices without authorization and stole a computer belonging to MOCA. From that computer, Mr. Bernier downloaded MOCA information to his own drives, and then erased information from MOCA's computers in order to cover his tracks.

Mr. Bernier and Penley Systems are currently using MOCA's confidential information, trade secrets, and/or goodwill to compete against MOCA and to go after MOCA's clients. These

activities are in breach of Mr. Bernier's contractual duties, as well as the legal and statutory obligations of both of the defendants.

MOCA brings this case to recover the considerable monetary damages it incurred as a result of Mr. Bernier's and Penley Systems' wrongful and disloyal acts, including but not limited to all of MOCA's lost profits, all of Mr. Bernier's and Penley Systems' wrongful gains, all compensation paid by MOCA to Mr. Bernier during the pendency of his disloyal acts, and attorneys' fees pursuant to contract and statute.

## PARTIES

1. MOCA Systems, Inc. is a corporation organized under the laws of the State of Delaware, with a principal place of business in Newton, Massachusetts.

2. The defendant, Kevin Bernier, is a resident of Weston, Massachusetts.

3. The defendant, Penley Systems, LLC, is a Massachusetts domestic limited liability company with a principal office in Weston, Massachusetts.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction pursuant to the Court's federal question jurisdiction, 28 U.S.C. § 1331. Count VI of this Complaint states a claim for violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. §1030.

5. The Court has personal jurisdiction over Mr. Bernier because he is domiciled in Massachusetts and over Penley Systems because its principal place of business is located in Massachusetts.

6. Venue is proper in this court because MOCA is headquartered in Newton, Massachusetts.

## FACTS COMMON TO ALL COUNTS

*MOCA's Business and Mr. Bernier's Role*

7. MOCA is a recognized leader and innovator in the construction industry as a program, project and construction management firm. MOCA provides a full range of services with innovative software technologies to address complex construction challenges.

8. Mr. Bernier worked for MOCA from August 2007 until January 4, 2013. For the majority of his tenure at the company, Mr. Bernier served as MOCA's President and Chief Executive Officer.

9. Mr. Bernier signed a series of agreements with MOCA. One such Agreement, the Confidentiality and Non-solicitation Agreement (the "Agreement," a copy of which is attached hereto as Exhibit A), contains a prohibition on Mr. Bernier's use or disclosure of the company's proprietary, confidential and trade secret information.

10. The Agreement further provides that during his employment with MOCA and for 12 months thereafter, Mr. Bernier is not to actively encourage any customer of the Company to terminate its contract or business relationship with the Company. (Agreement, Section 2(c)) The Agreement also prohibits Mr. Bernier from encouraging any employee or consultant of the company to terminate his or her employment or engagement at any time during Mr. Bernier's employment or within 12 months thereafter. (*Id.*, Section 2(b)) Mr. Bernier agreed that the foregoing restrictions are reasonable in time, scope and under the circumstances. (*Id.*, Section 3(e)(i))

11. Mr. Bernier was highly compensated by MOCA. Between 2010 and 2012, for example, MOCA paid Mr. Bernier more than $1 million in salary, cash bonuses and stock bonuses.

12. Because of his position as President and CEO, and later, his position as a Vice President, and in reliance upon his commitments in the Agreement, MOCA gave Mr. Bernier access to its protected databases that contain MOCA's most sensitive confidential and proprietary information and trade secrets concerning its relationships with clients, prospective clients, and vendors.

13. MOCA also put Mr. Bernier in a position to develop goodwill for MOCA with its customers, contractors and vendors.

**Mr. Bernier Undermines and Usurps MOCA's Relationship with a Major Client, DCAMM**

14. One of MOCA's significant clients is the Commonwealth of Massachusetts Division of Capital Asset Management and Maintenance ("DCAMM"). DCAMM is a state agency responsible for integrated facilities management, major public building construction, and real estate services for the Commonwealth.

15. Beginning in 2011, MOCA worked with DCAMM on a significant, long-term project called the "Accelerated Energy Program" ("AEP"). The AEP was a program by which DCAMM was transforming the way that it plans, designs, retrofits, and manages the Commonwealth's high-performance, sustainable facilities and infrastructure.

16. MOCA supported DCAMM in the planning, data management, and initial execution of the AEP. MOCA's work was pursuant to a series of "Task Orders."

17. In early fall 2012, the working relationship between DCAMM and MOCA was excellent, the project was progressing nicely, and then MOCA received some great news. DCAMM informed MOCA that funds had been set aside for a two year contract for the next Task Order, #6, and that MOCA should plan to submit a proposal later in the fall.

18. On November 19, 2012, MOCA submitted a proposal to DCAMM for a two-year project in support of the AEP for Task Order #6. The proposed term was from January 2013 to December 2014 and the value of the contract was for $2.1 million.

19. On November 30, 2012, representatives from MOCA and DCAMM met regarding strategy. Mr. Bernier was the lead representative at that meeting from MOCA. After the meeting concluded, Mr. Bernier called two of his subordinates into his office and informed them that he was planning to leave MOCA in a few months and work on the AEP independent of MOCA. He encouraged the two subordinates to quit their jobs at MOCA and join him. Mr. Bernier requested that the two subordinates not tell anyone at MOCA about his plans.

20. Consistent with his statement to the two subordinates, during the fall of 2012, Mr. Bernier made secret plans to start his company. He applied to become recognized as a disabled veterans business. He told one of his subordinates that he planned to wait until this designation for the proposed business was approved before he left MOCA.

21. On December 18, 2012, DCAMM announced that it was going to enter into a two year contract with MOCA. Then, on December 21, 2012, Mr. Bernier had a conference call with DCAMM. During this call, in which Mr. Bernier purported to represent his employer, MOCA, Mr. Bernier told DCAMM that it should not enter into a contract with MOCA for two years, as was planned and expected by all parties. Mr. Bernier made misrepresentations to DCAMM in support of his position that the contract should be shortened.

22. Mr. Bernier proposed to DCAMM that they shorten the term of the contract from two years to three months. DCAMM did not want to be dealing with contracting on such a frequent basis, so DCAMM shortened the proposed contract to six months.

23. At the same time that he was working to devalue any potential contract between MOCA and DCAMM, Mr. Bernier was also taking steps to ensure that MOCA would never get any further contracts from DCAMM.  For example, on December 31, 2012, Mr. Bernier wrote a "confidential" e-mail to two DCAMM representatives which was highly critical of MOCA and insinuated that MOCA was being untruthful with DCAMM – which was itself untrue.  Further, on January 2, 2013, at DCAMM's office, Mr. Bernier criticized and berated the MOCA technology team in the presence of DCAMM's project manager.

24. The reason that Mr. Bernier was trying to shorten and/or eliminate any contract between MOCA and DCAMM is that Mr. Bernier knew that he was about to quit his job at MOCA and start his new company, Penley Systems; he wanted to put Penley Systems in a position to take over the opportunity to be the contractor with DCAMM on the AEP in substitution for his employer, MOCA.  Mr. Bernier knew that this opportunity for Penley Systems and himself would not exist if MOCA locked up a two year contract with DCAMM.

25. On January 4, 2013, as Mr. Bernier appears to have planned and expected, MOCA terminated Mr. Bernier's employment.

26. On the day he was terminated, Mr. Bernier incorporated Penley Systems.  Shortly thereafter, Mr. Bernier and Penley Systems sent a proposal to DCAMM to do the work that MOCA had been in line to get.

27. On January 23, 2012, DCAMM notified MOCA that it would not contract with MOCA for Task Order #6 (which it renamed Task Order #01).

28. Mr. Bernier and Penley Systems are currently working with DCAMM on the AEP.

**Mr. Bernier Steals a MOCA Computer and Attempts to Cover His Tracks**

29. In the days after his employment with MOCA was terminated, Mr. Bernier entered MOCA's office without authorization and took a company-owned computer. He also refused to return another MOCA computer that was in his possession.

30. When MOCA finally received the computers back, they appeared to have been pilfered and altered. Mr. Bernier appears to have downloaded information onto USB devices, and after his downloads were complete, it appears that he deleted significant amounts of information in an attempt to cover his tracks.

31. It also appears from the retrieved computers that Mr. Bernier used MOCA's systems and resources in order to found Penley Systems.

**Mr. Bernier Disparages MOCA**

32. Mr. Bernier has made a series of disparaging and defamatory remarks about MOCA.

33. For example, after leaving MOCA, Mr. Bernier published on his LinkedIn page, for hundreds of industry contacts to see, that MOCA's management was a "questionable bunch." He also told a vendor that "things are a mess over at MOCA" and that MOCA was "in trouble." None of these statements are true or were true when Mr. Bernier made them.

**COUNT I**
**Misappropriation of Confidential, Proprietary And Trade Secret Information**
**(against Mr. Bernier and Penley Systems)**

34. MOCA realleges and incorporates herein the foregoing allegations.

35. Applicable law prohibits the actual or threatened misappropriation of trade secrets.

36. Mr. Bernier is in possession of MOCA's trade secret information.

7

37. MOCA has taken reasonable steps to maintain the confidential nature of these trade secrets.

38. The information used by Mr. Bernier has substantial value to MOCA, in part because it is confidential and proprietary, and derives significant independent economic value from not being generally known to the public or to others who can obtain economic value from its disclosure or use. If other companies could lawfully obtain access to that information, they would pay substantial amounts for the right to do so. Accordingly, the above-described information constitutes "trade secrets" under applicable law.

39. Mr. Bernier was and is under a duty to both keep MOCA's confidential, proprietary and trade secret information secret, and not to use or disclose such information other than for the benefit of MOCA. In abusing his access to MOCA's system and using it for his own benefit and the benefit of Penley Systems, Mr. Bernier and Penley Systems knew that they acquired such information under circumstances giving rise to a breach of a duty to maintain its secrecy and limit its use, and/or that they derived such information from or though a person who has such a duty or through improper means. Mr. Bernier obtained the confidential, proprietary and trade secret information described above directly or indirectly from MOCA, and not from generally available information or through his own independent research and efforts.

40. Mr. Bernier and Penley Systems have improperly used and threatened to use those trade secrets, by, among other actions, using MOCA's trade secrets to identify, target, and solicit at least one client of MOCA, and perhaps others. Mr. Bernier's actions constitute misappropriation of MOCA's trade secrets.

41. In addition, as a direct and proximate result of Mr. Bernier's and Penley Systems' misappropriation of MOCA's trade secrets, the defendants have been unjustly enriched in an

amount to be proven at trial, and MOCA has sustained, and will continue to sustain, actual damages in an amount to be proven at trial, and well in excess of the amounts required for jurisdiction of this Court.

42. Each of the acts of misappropriation was done willfully and maliciously by the defendants, with the deliberate intent to injure MOCA's business, and to improve their own business, and for their own financial gain, thereby entitling MOCA to exemplary damages to be proven at trial.

43. The copying, disclosure and/or use of such information by Mr. Bernier and Penley Systems constitutes an unauthorized copying, disclosure or use of confidential information in violation of the common law and statutory law, including but not limited to Mass. Gen. L. c. 93, secs. 42 and 42A.

## COUNT II
## Breach of Contract
## (against Mr. Bernier)

44. MOCA realleges and incorporates herein the foregoing allegations.

45. The Agreement is a valid contract, supported by consideration.

46. MOCA has performed its obligations under the Agreement.

47. Mr. Bernier has breached the Agreement by his conduct herein described, including but not limited to:

    a. Divulging and/or using MOCA's Proprietary Information;

    b. Actively encouraging MOCA's employees and/or consultants to terminate their employment and/or engagement; and

    c. Actively encouraging MOCA's customers to terminate their contracts and/or business relationships.

48. MOCA has suffered and will continue to suffer substantial harm as a result of Mr. Bernier's actions.

## COUNT III
### Breach of Duty of Loyalty
### (against Mr. Bernier)

49. MOCA realleges and incorporates herein the foregoing allegations.

50. As an employee and executive of MOCA, Mr. Bernier owed MOCA an undivided duty of loyalty.

51. Mr. Bernier breached his duty of loyalty by the acts herein described, including but not limited to:

   a. secretly working for a direct competitor during the term of his employment with MOCA;

   b. Undermining the relationship between MOCA and DCAMM;

   c. Causing DCAMM to shorten the length of the proposed contract with MOCA;

   d. Discouraging DCAMM from entering into a contract with MOCA; and

   e. Diverting opportunities away from MOCA and toward Penley Systems.

52. As a result of Mr. Bernier's breach of his duty of loyalty, MOCA has suffered and will continue to suffer substantial harm.

## COUNT IV
### Intentional Interference with Prospective Business Relations
### (against Mr. Bernier and Penley Systems)

53. MOCA realleges and incorporates herein the foregoing allegations.

54. MOCA has contractual and prospective business relations with numerous third parties, including but not limited to DCAMM.

55. Mr. Bernier and Penley Systems, with improper purpose and means, have disrupted and threaten to disrupt MOCA's relationships with third parties with which MOCA has prospective business relations, including but not limited to DCAMM.

56. Among other things, Mr. Bernier made untruthful statements and/or disclosed confidential information to at least one prominent client, DCAMM, causing that client to discontinue its business relationship with MOCA. Many of Mr. Bernier's actions took place while he was employed by MOCA.

57. MOCA has suffered and will continue to suffer substantial harm as a result of Mr. Bernier's actions.

## COUNT V
### Conversion
### (against Mr. Bernier)

58. MOCA realleges and incorporates herein the foregoing allegations.

59. By doing the acts complained of herein, Mr. Bernier wrongfully took possession of MOCA's property and converted it for his own use, benefit and financial gain, without MOCA's consent or permission, in violation of his contractual and common law duties to MOCA.

60. As a proximate result of Mr. Bernier's decision to convert MOCA's property for his own use and the use of Penley Systems, and for his and their benefit and financial gain, Mr. Bernier has caused MOCA to suffer damages in an amount to be proven at trial.

61. Mr. Bernier's acts were willful and malicious, with the deliberate intent to injure MOCA's business and for Mr. Bernier's own financial gain, thereby entitling MOCA to exemplary damages.

## COUNT VI
### Violation of Computer Fraud and Abuse Act/18 U.S.C. §1030
### (against Mr. Bernier)

62. MOCA realleges and incorporates herein the foregoing allegations.

63. Mr. Bernier voluntarily entered into the Agreement, stating that during and after his employment with MOCA he would "maintain in confidence and not utilize the Proprietary Information…of the Company."

64. MOCA provided Mr. Bernier with access to its confidential and proprietary information in reliance upon his agreement to the terms of the confidentiality agreement.

65. Mr. Bernier knowingly, and with the intent to defraud MOCA, accessed MOCA's proprietary and confidential information that is stored on its secure and protected databases. Mr. Bernier repeatedly used, disclosed and misappropriated confidential information belonging to MOCA to assist in a competitive business venture and, in so doing, he breached his duty of loyalty to MOCA.

66. Mr. Bernier acted without access and/or he exceeded his authorized access to MOCA's computers and protected databases.

67. As a direct result of Mr. Bernier's actions, MOCA has suffered damages and/or loss exceeding $5,000.

## COUNT VII
### Commercial Disparagement
### (against Mr. Bernier)

68. MOCA realleges and incorporates herein the foregoing allegations.

69. Mr. Bernier made false statements of fact to MOCA's customers and industry regarding MOCA, its services, and its management with knowledge of the falsity of the statements or reckless disregard for its truth.

70. The publication of these statements caused pecuniary loss to MOCA, which was intended or foreseeable.

## COUNT VIII
## Constructive Trust
## (against Mr. Bernier and Penley Systems)

71. MOCA realleges and incorporates herein the foregoing allegations.

72. Mr. Bernier and Penley Systems obtained certain of MOCA's assets, by means of a breach of duty of loyalty by Mr. Bernier, and other wrongful conduct alleged above.

73. Accordingly, MOCA is entitled to a constructive trust over those assets.

## COUNT IX
## Violation of M.G.L. c. 93A
## (against Penley Systems)

74. MOCA realleges and incorporates herein the foregoing allegations.

75. MOCA and Penley Systems were engaged in trade and commerce at relevant times.

76. Penley Systems' conduct as described above constitutes unfair and deceptive acts and practices in violation of M.G.L. 93A.

77. Penley Systems willfully and knowingly committed these unfair and deceptive acts and practices.

78. Penley Systems' unfair and deceptive acts and practices occurred primarily and substantially within the Commonwealth of Massachusetts, including but not limited to the acts and practices carried out by Mr. Bernier, who resided and had a primary place of business in Massachusetts.

79. MOCA has suffered the loss of money and/or property, including legal fees, as a result of the unfair and deceptive acts and practices of Penley Systems, for which Penley Systems is liable.

80. MOCA is entitled to recover multiple damages.

81. MOCA has suffered and will suffer substantial harm as a result of Penley Systems' actions.

### COUNT X
### Accounting
### (against Mr. Bernier and Penley Systems)

82. MOCA realleges and incorporates herein the foregoing allegations.

83. The facts alleged herein entitle MOCA to an equitable accounting.

### PRAYERS FOR RELIEF

WHEREFORE, MOCA requests that this Court award relief as follows:

(1) Actual and compensatory damages, including but not limited to all of MOCA's lost profits, all of Mr. Bernier's and/or Penley Systems' wrongful gain, and all compensation paid by MOCA to Mr. Bernier during the pendency of his wrongful and tortious acts.

(2) An injunction requiring Mr. Bernier to abide by the terms of the Agreement.

(3) An order requiring Mr. Bernier to provide a full accounting of his activities and the activities on behalf of Penley Systems during his employment with MOCA.

(4) An equitable accounting.

(5) Attorneys' fees and costs pursuant to statute.

(6) Multiple damages pursuant to statute.

(7) Interest.

(8) Pre-judgment attachment of assets sufficient to satisfy an eventual judgment in this action.

(9) Such other legal or equitable relief that the Court deems just and appropriate.

## JURY DEMAND

Plaintiff requests a jury trial on all claims which are triable to a jury.

                                          MOCA SYSTEMS, INC.
                                          By Its Attorneys,

                                          _/s/ C. Max Perlman_____
                                          C. Max Perlman, Esq. (BBO# 630395)
                                              (max@hrwlawyers.com)
                                          HIRSCH ROBERTS WEINSTEIN LLP
                                          24 Federal Street, 12th Floor
                                          Boston, Massachusetts 02110
                                          (617) 348-4300

March 29, 2013