UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MOCA SYSTEMS, INC., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 13-10738-LTS |
| KEVIN F. BERNIER and PENLEY SYSTEMS, LLC, | ) ) ) ) ) | |
| Defendants. | ) ) | |

ORDER ON DEFENDANTS'
MOTION TO STAY PENDING ARBITRATION

February 18, 2014

SOROKIN, C.M.J.

The Plaintiff, MOCA Systems, Inc., filed a ten-count Amended Complaint (Doc. No. 40) against its former CEO, Kevin Bernier, and Penley Systems, LLC, a company Bernier founded. The Amended Complaint ("Complaint") alleges that Bernier used MOCA company resources and confidential information to guide an important client away from MOCA and toward Penley. Defendants Bernier and Penley now move to stay this action pending arbitration asserting that Bernier's Employment Agreement requires the entire Complaint to be submitted to arbitration. For the reasons that follow, Defendants' motion (Doc. No. 37) is ALLOWED.

I.  STATEMENT OF FACTS

Defendants move to stay this action pending arbitration under a letter agreement ("Employment Agreement") dated August 28, 2007. Doc. Nos. 37 at 2-3. Bernier submits only an unsigned copy of this Employment Agreement. However, he attests that he reviewed the

Employment Agreement in late August 2007, that he signed it, and that he recalls Walter Winshall, MOCA's Director, executing the Agreement on MOCA's behalf.  Doc. No. 47-2, ¶¶ 2, 8-10.  Bernier further attests that the Board of Directors discussed the Employment Agreement, voted to ratify it at that meeting, and "ordered the Company's Secretary to document the execution of the Employment Agreement in the Board Minutes and save a copy of the Agreement with the Board Minutes in a secure location with the other Company Board Minutes."  Id. ¶¶ 11-12.

    MOCA has produced a copy of the relevant Board minutes.  While the Minutes contain no mention of the Employment Agreement having been executed at the meeting, they do refer to the Board approving modifications to an earlier draft; modifications that appear in the unsigned Employment Agreement submitted to the Court by Bernier.  The minutes also record the Board's authorization that Mr. Winshall may execute the Agreement.  Board Minutes at 2.  MOCA proffers that it has no signed copy of the Agreement and that Winshall would testify that while he does not recall signing the Agreement, he does not dispute that he did and that he possesses no recollection either that he did or did not sign it.  Finally, MOCA concedes (1) that it has no evidence to dispute Bernier's assertion that MOCA executed the Agreement and (2) that the parties conformed their subsequent behavior to the terms of the Employment Agreement.  In these circumstances, I find that Bernier has met his burden to establish both that the parties entered into a valid binding contract and that the unsigned document he submitted to the Court is the contract to which the parties agreed.

    The Employment Agreement defined Bernier's position as President and CEO of MOCA and established the terms of his employment under his base salary, bonus plan, and entitlement

to stock options. Doc. No. 47-1, ¶¶ 1-4. It also contains an arbitration clause ("Arbitration Clause") providing:

> You and the Company agree to waive any rights to a trial before a judge or jury and agree to arbitrate before a neutral arbitrator any and all claims or disputes arising out of this letter and any and all claims arising from or relating to your employment with the Company, including (but not limited to) claims against any current or former employee, director or agent of the Company, claims of wrongful termination, retaliation, discrimination, harassment, breach of contract, breach of the covenant of good faith and fair dealing, defamation, invasion of privacy, fraud, misrepresentation, constructive discharge or failure to provide a leave of absence, or claims regarding stock options or bonuses, infliction of emotional distress or unfair business practices.
>
> The arbitrator's decision will be final and binding on both parties, except to the extent applicable law allows for judicial review of arbitration awards. The arbitration will be conducted in Massachusetts in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association. You and the Company will share the costs of arbitration equally. Both the Company and you will be responsible for their own attorneys' fees, and the arbitrator may not award attorneys' fees unless a statute or contract at issue specifically authorizes such an award.

Id. ¶ 8. The Employment Agreement further states that "[t]his letter agreement supersedes and replaces any prior agreements, representations or understandings, whether written, oral or implied, between you and the Company." Id. ¶ 7.

Three years after the August 2007 Employment Agreement, MOCA and Bernier entered into a letter agreement. This "Confidentiality and Non-solicitation Agreement" ("CNA"), dated August 20, 2010, effective as of December 15, 2010, governed the use of confidential information by Bernier, a topic not discussed expressly in the Employment Agreement, and prohibited Bernier from soliciting company employees, consultants, or customers, or making use of confidential information during the twelve months after his termination, in the event a termination occurred. Doc. No. 1-1, ¶¶ 1-2.

The CNA, signed by both parties, states that it is "[i]n consideration for the continuing employment of [Bernier] by [MOCA][.]"  Doc. No. 1-1 at 1.  It does not contain any provisions regarding Bernier's salary, bonuses, or stock options.  It does provide the following:

> This Agreement contains the entire agreement between the parties concerning the subject matter discussed here.  Any modification of this Agreement shall be effective only if in writing and signed by each party or its duly authorized representative.

Id. ¶ 3(c).  The CNA states that it "shall in all respects be governed by the laws of the Commonwealth of Massachusetts[,]" Id. ¶ 3(a), and, "[i]t is understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement by Employee and that the Company shall be entitled to specific performance and injunctive relief as remedies for any such breach[,]" Id. ¶ 3(b).  Furthermore, the CNA provides for substitution of terms should "a court hold[] that any portion of this Agreement is unenforceable."  Id. ¶ 3(e).

Plaintiff's Complaint alleges a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, arising out of employment and post-employment access by Bernier to MOCA's computers, a breach of the CNA in several respects, violation of M.G.L. 93A, and the following common law claims: misappropriation of confidential, proprietary and trade secret information; breach of the duty of loyalty; intentional interference with prospective business relations; conversion; commercial disparagement; constructive trust; and accounting.  Doc. No. 40, ¶¶ 34-83.  Invoking the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., and the Massachusetts Uniform Arbitration Act for Commercial Disputes, M.G.L. c. 251, Defendants move for a stay of this action pending arbitration, contending that each and every claim "arises out of employment."[1]  Plaintiff opposes, asserting that none of the claims so arise.

---

[1] Defendants offer to stipulate that the arbitration results would bind Penley. Doc. No. 37 at 4.

II.     DISCUSSION

"A party seeking to compel arbitration under the FAA must demonstrate 'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Dialysis Access Ctr., LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011) (quoting InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir.2003)). "Whether or not a dispute is arbitrable is typically a question for judicial determination."[2] Id.

"'When deciding whether the parties agreed to arbitrate a certain matter . . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" Id. at 376 (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). This determination of scope, however, must give "due regard" to the "federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." Id. (quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62 (1995)). Courts "discharge this duty by: (1) applying the presumption of arbitrability only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand; and (2) adhering to the presumption and ordering arbitration only where the presumption is not rebutted." Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S. Ct. 2847, 2858-59 (2010).

Bernier has meet his burden, see Dialysis Access Ctr., LLC, 638 F.3d at 375, to show the existence of a valid and binding agreement to arbitrate at least some claims. Supra. Thus, the question before the Court is which, if any, of MOCA's claims are encompassed by the Arbitration Clause in the Employment Agreement.

---

[2] "[P]rocedural questions which grow out of the dispute and bear on its final disposition are presumptively not for the judge, but for an arbitrator, to decide." Id. (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)) (internal quotations omitted).

Bernier contends each and every claim alleged against him falls under the Employment Agreement's Arbitration Clause encompassing "any and all claims or disputes arising out of this letter and any and all claims arising from or relating to your employment with the Company." There is no doubt that MOCA's claim for breach of the duty of loyalty falls within the reach of this Arbitration Clause.  The claim could not exist without the employment relationship and the factual allegations concern conduct while Bernier was an employee.  MOCA "essentially concedes" this point, as it must.  The Motion to Stay in favor of Arbitration is ALLOWED as to Count III of the Amended Complaint.  For much the same reasons, Bernier contends the Employment Agreement compels arbitration of the remaining claims.  MOCA opposes advancing four arguments.

First, MOCA argues that given the language of the Employment Agreement only those claims, such as breach of the duty of loyalty, that exist solely because of the employment relationship are within the scope of the Arbitration Clause.  Massachusetts contract interpretation rules assign contract language its plain meaning, bringing common sense to bear.  See City of Haverhill v. George Brox, Inc., 47 Mass. App. Ct. 717, 720 (1999).  The text of the entire Arbitration Clause, even without the strong policy favoring arbitration, does not support MOCA's view.  The clause provides that both the Company and the employee "agree to waive any rights to a trial before a judge or jury."  Doc. No. 47-1, § 8.  The illustrative list of claims within the scope of the clause includes claims such as breach of contract, defamation, invasion of privacy, fraud and others that do not depend, by definition, on an employment relationship.

Second, MOCA argues that its claims arise out of Bernier's conduct after MOCA terminated his employment (or in some instances conduct before and after) and, therefore, the claims do not arise from or relate to Bernier's employment.  Again, the text of the Arbitration

6

Clause does not support MOCA's view. The parties selected language that is broad in scope: "arising from or relating to your employment with the Company." In so doing, they defined the reach of the Arbitration Clause in terms of the nature of the factual allegations supporting a claim. Even if the claim only "relates" to the employment with the Company, the claim is within the Arbitration Clause. Though allegations concerning post-employment conduct may also support the claim, that does not automatically remove the claim from the reach of Arbitration Clause; it merely raises the question of whether, in light of the all the allegations, the claim "arises from or relates to" Bernier's employment with MOCA. With this in mind, I turn to each of MOCA's remaining claims.[3]

Count I, common law misappropriation of confidential and other information, arises from and relates to MOCA's trade secret information that Bernier possesses by virtue of employment with the Company. Doc. No. 40, ¶ 36. The common law "duty" MOCA seeks to enforce, id. ¶ 39, arises from Bernier's employment relationship. See Augat, Inc. v. Aegis, Inc., 409 Mass. 165, 172 (1991); Eastern Marble Products Corp. v. Roman Marble, Inc., 372 Mass. 835, 841 (1977) ("It is settled by our cases that the duty of an employee not to disclose confidential information is grounded on 'basic principles of equity . . . and upon an implied contract, growing out of the nature of the employer-employee relation.'") (internal quotations omitted) (quoting Jet Spray Cooler, Inc. v. Crampton, 361 Mass. 835, 839 (1972)). Count IV, intentional interference with prospective business relations, arises, in part, out of Bernier's alleged "disclos[ure] of confidential information to at least one prominent client" and "[m]any of Mr. Bernier's actions [supporting this claim] took place while he was employed by MOCA." Doc. No. 40, ¶ 56. Count V, conversion, concerns MOCA's allegation that Bernier "wrongfully took possession of

---

[3] Counts VII, Constructive Trust, and X, Accounting, are derivative claims seeking remedies only and thus follow the disposition of the other claims. Count II, Breach of Contract - the CNA, is discussed separately below.

MOCA's property and converted it for his own use, benefit and financial gain, without MOCA's consent or permission, in violation of his contractual and common law duties to MOCA." Id. ¶ 59.  Count VI, the Computer Fraud and Abuse Act claim, arises from the allegation that Bernier "knowingly, and with the intent to defraud MOCA, accessed MOCA's proprietary and confidential information that is stored on its secure and protected databases[,] . . . repeatedly used, disclosed and misappropriated confidential information belonging to MOCA to assist in a competitive business venture and, in so doing, he breached his duty of loyalty to MOCA."  Id. ¶ 65.  This claim is also supported by the allegation that in the "days after his employment with MOCA was terminated, Mr. Bernier entered MOCA's office without authorization and took a company-owned computer" which, upon return, "appeared to have been pilfered and altered." Id. ¶¶ 29-30.

Count VII, commercial disparagement, alleges Bernier made "false statements of fact to MOCA's customers and industry regarding MOCA[] . . . with knowledge of the falsity of the statements or reckless disregard for its truth."  Id. ¶ 69.  The remarks identified by MOCA are "that MOCA's management was a 'questionable bunch[,]'" that "'things are a mess over at MOCA[,]'" and that MOCA was "'in trouble.'"  Id. ¶ 33.  Bernier allegedly made these statements prior to the filing of this action on March 29, 2013; MOCA terminated him on January 4, 2013.  Id. ¶ 25.

MOCA's own allegations establish that these claims against Bernier "arise from or relate to" his employment with the Company, unless any of its remaining arguments undermine this conclusion.

Third, MOCA argues that the Court should apply precedent construing M.G.L. ch. 93A, § 11, to the interpretation of the Arbitration Clause within the Employment Agreement.  While a

creative argument, the caselaw is inapposite. The Supreme Judicial Court has made clear that "disputes arising out of the employment relationship between an employer and an employee are not cognizable under c. 93A." Manning v. Zuckerman, 388 Mass. 8, 15 (1983). When an employee leaves one employer for another, courts have permitted the former employer to proceed with claims under chapter 93A against the new employer even when these arise from, for example, the new employer's use of confidential information provided to it by the employee. See, e.g., Peggy Lawton Kitchens v. Hogan, 18 Mass.App.Ct. 937, 939 (1984); Network Sys. Architects Corp. v. Dimitruk, No. 06-4717-BLS2, 2007 WL 4442349, at *10-11 (Mass. Super. Dec. 6, 2007). Similarly, courts have rejected as not cognizable, 93A claims by the former employer against the employee. See, e.g., Informix, Inc. v. Rennell, 41 Mass. App. Ct. 161, 163 (1996). The 93A cases applying the "arising from" language do not materially inform the interpretation of the parties' Employment Agreement. The caselaw under Chapter 93A concerns different language with different purposes.

Finally, MOCA contends that Count II, the breach of the CNA contract, is not subject to arbitration in light of certain express terms of the CNA. Specifically, the CNA provides that:

- it is the "entire agreement between the parties concerning the subject matter discussed herein[,]" Doc. No. 1-1, ¶ 3(c);

- it "shall in all respects be governed by the laws of the Commonwealth of Massachusetts[,]" id. ¶ 3(a); and,

- "[i]t is understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement by Employee and that the Company shall be entitled to specific performance and injunctive relief as remedies for any such breach." Id. ¶ 3(b). Furthermore, the

9

CNA provides for substitution of terms should "a court hold[] that any portion of this Agreement is unenforceable." Id. ¶ 3(e)(ii).

Bernier contends that the phrase the "entire agreement between the parties concerning the subject matter" means this is the totality of our substantive agreements about confidentiality and non-solicitation. Because the CNA says nothing about arbitration Bernier reasons it leaves undisturbed the Arbitration Clause from the Employment Agreement. Plainly, the Arbitration Clause encompasses this breach of contract claim, unless the text of the CNA provides otherwise. MOCA says it does. It reasons that by agreeing that the CNA was the "entire agreement," Bernier acknowledged that this was it, that the CNA contained a complete recitation of all of the parties' terms and agreements governing confidentiality and non-solicitation.[4] Moreover, the parol evidence rule, in the case of an integrated agreement such as this, would prohibit consideration of extrinsic evidence which contradicts or merely supplements, except where there is ambiguity in the agreement. See Bowlby v. Carter Mfg. Corp., 138 F. Supp. 2d 182, 188 (2001). MOCA points out that the CNA does not reference, incorporate, or discuss Bernier's Employment Agreement. However, the CNA does recite that it is in consideration of Bernier's continued employment with MOCA.[5] Doc. No. 1-1, at 1. The Court cannot read the CNA in isolation; the question at issue – whether the CNA ousts the otherwise applicable reach of the Arbitration Clause in the Employment Agreement over a claim for breach of the CNA – necessarily requires consideration of the Employment Agreement, especially where both touch on the same relationship. In this case, whether the Arbitration Clause reaches the breach of contract claim is ambiguous. The strong federal and state policy favoring arbitration thus

---

[4] MOCA concedes that but for this provision of the CNA its breach of contract claim is subject to the arbitration clause.

[5] The CNA does contain several specific provisions regarding enforcement each of which discusses, only, judicial enforcement, judicial proceedings or judicial rulings which might suggest the parties' intent to select a judicial forum for resolution of disputes arising from the CNA, although MOCA makes no such argument. The Court has nonetheless considered these provisions and the outcome remains unchanged.

requires that the Court remand this claim to arbitration.  See Dialysis Access Ctr., LLC, 638 F.3d at 376; Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 603 (2000).

III.    CONCLUSION

For the foregoing reasons, Defendants Kevin Bernier and Penley Systems, LLC's Motion to Stay Pending Arbitration (Doc. No. 37) is ALLOWED.

Because the sole federal claim, Count VI, is no longer before this Court, MOCA must show cause, within fourteen days, why the Court should not dismiss this entire case in reassessment of its supplemental jurisdiction.  See 28 U.S.C. § 1367; Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  In addition, the parties shall submit a joint status report within fourteen days to address (1) their position regarding the claims against Penley; (2) which, if any, of Bernier's counterclaims the parties agree proceed to arbitration in light of the Court's opinion; (3) the parties suggested course for proceeding on MOCA's Motion to Dismiss. Bernier's response to the Motion to Dismiss is STAYED pending a ruling from the Court after receipt of the status report.

SO ORDERED.

   /s / Leo T. Sorokin
Leo T. Sorokin
Chief United States Magistrate Judge